NOT FOR PUBLICATION                                                                                   CLOSE

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

DAYS INN WORLDWIDE, INC, a
Delaware Corporation,

          Plaintiff,

v.

PGP PENSACOLA, LLC, a Florida Limited
Liability Company

          Defendant.

**OPINION**

Civ. No. 13-4264 (WHW)(CLW)

**Walls, Senior District Judge**

In this action for breach of a franchise agreement, Plaintiff Days Inns Worldwide, Inc. ("DIW") moves under Fed. R. Civ. P. 56 for summary judgment against Defendant PGP Pensacola, LLC ("PGP"). Decided without oral argument under Fed. R. Civ. P. 78, Plaintiff's uncontested motion is granted.

### PROCEDURAL AND FACTUAL BACKGROUND

The following facts are uncontested. Plaintiff DIW is a corporation organized and existing under the laws of Delaware, with its principal place of business in Parsippany, New Jersey. Pl.'s Statement of Material Facts ("SMF") ¶ 1, ECF No. 13-3. Defendant PGP is a limited liability company organized and existing under the laws of Florida, with its principal place of business at 6919 Pensacola Boulevard, Pensacola, Florida 32505. Id. ¶ 4. Jay S. Patel ("Patel") is president and 50% owner of PGP. Id. ¶ 5.

On May 19, 2006, DIW entered into a license agreement ("the license agreement") with PGP for the operation of a 116-room Days Inn® guest lodging facility located at 6501 Pensacola

Boulevard, Pensacola, Florida 32505, Site No. 17970-61288-1 (the "facility"). *See* Aff. of Suzanne Fenimore in Supp. of Mot. for Summ. J. ("Fenimore Aff.") Ex. A. ECF No. 13-5. Patel reviewed and executed the License Agreement on behalf of PGP. Pl.'s SMF ¶¶ 7-8.

Under the license agreement, DIW licensed the "distinctive 'Days Inn' System for providing transient guest lodging services" to PGP. Fenimore Aff. Ex. A § 1. In exchange, PGP assumed multiple obligations. Under section 5, PGP was obligated to operate a Days Inn® guest lodging facility for a fifteen-year term. Pl.'s SMF. ¶ 9. Under section 7, section 18.1 and Schedule C, PGP was required to make certain periodic payments to DIW for royalties, system assessment fees, taxes, interest, reservation system user fees, and other fees (collectively, the "Recurring Fees"). *Id.* ¶ 10. PGP also agreed, under section 7.3 of the license agreement, that interest was payable "on any past due amount payable to [DIW] under this [License] Agreement at the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, accruing from the due date until the amount is paid." *Id.* ¶ 15.

Under section 3.8, PGP was required to disclose to DIW, among other things, the amount of gross room revenue earned by PGP at the facility for purposes of establishing the amount of royalties and other Recurring Fees due to DIW. *Id.* ¶ 17. Also under that section, PGP agreed to maintain at the facility accurate financial information relating to the gross room revenue of the facility, including books, records, and accounts. *Id.* ¶ 18. PGP agreed to allow DIW to examine, audit, and make copies of the entries in these books, records and accounts. *Id.*

Section 11.2 of the license agreement provided that DIW could terminate the license agreement, with notice to PGP, if PGP (a) discontinued operating the facility as a Days Inn® guest lodging establishment, and/or (b) lost possession or the right to possession of the facility. *Id.* ¶ 19. Under section 12.1 of the license agreement, if DIW terminated the lease under section

11.2, PGP agreed to pay DIW liquidated damages in accordance with a formula specified in the license agreement. *Id.* ¶ 20. The formula is set forth in section 18.6 of the license agreement: $1,000 for each guest room of the facility at the time of termination. *Id.* ¶ 21. PGP also agreed, under section 17.4 of the license agreement, that the non-prevailing party would "pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this [License] Agreement or collect amounts owed under this [License] Agreement." *Id.* ¶ 22.

On or around February 25, 2013, PGP unilaterally terminated the license agreement by ceasing to operate the facility as a Days Inn® guest lodging facility. *Id.* ¶ 25. By letter dated March 28, 2013, DIW acknowledged PGP's unilateral termination and advised PGP that it was required to pay both liquidated damages in the sum of $116,000 ($1,000 for each of the 116 guest rooms at the time of termination) and all outstanding Recurring Fees through the date of termination. *Id.* ¶¶ 21, 27.

Because Defendant never paid those amounts, DIW filed the complaint in this matter on July 12, 2013. ECF No. 1; Certification of Bryan P. Couch in Supp. of Mot. for Summ. J. ("Couch Cert.") ¶ 3, ECF No. 13-6. On April 24, 2015, DIW moved for summary judgment on the third, fifth and sixth counts of the complaint, seeking damages for breach of the license agreement. ECF No. 13. DIW seeks recurring fees in the amount of $193,742.10, and $160,738.22 in liquidated damages (inclusive of interest, calculated at the rate of 1.5% per month under section 7.3 of the license agreement). *See* Fenimore Aff. ¶¶ 26-27, 34; *id.* Ex. C. DIW also seeks attorneys' fees and costs in the amount of $8,935.69. *See* Fenimore Aff. ¶ 35; *id.* Ex. A; Couch Cert. ¶¶ 17-19; *id.* Ex. N (specifying the legal work performed and the expenses incurred). In total, DIW seeks the $363,416.01 allegedly due to it as of May 18, 2015. Fenimore Aff. ¶ 36.

### STANDARD ON SUMMARY JUDGMENT

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute between the parties must be both genuine and material to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A disputed fact is material where it would affect the outcome of the suit under the relevant substantive law. *Scott v. Harris*, 550 U.S. 372, 380 (2007). A dispute as to a material fact is genuine where a rational trier of fact could return a verdict for the non-movant. *Id.* The movant bears the initial burden to demonstrate the absence of a genuine issue of material fact for trial. *Beard v. Banks*, 548 U.S. 521, 529 (2006). Once the movant has carried this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" in question. *Scott*, 550 U.S. at 380 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)). Each party must support its position by "citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). At this stage, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter." *Anderson*, 477 U.S. at 249. Where there is a genuine dispute as to a material fact, the court must view that fact in the light most favorable to the non-movant. *Scott*, 550 U.S. at 380.

### DISCUSSION

**I.    Summary Judgment is Appropriate**

The material facts of this case are not in dispute. DIW supports its factual assertions with sworn declarations and documents, and PGP did not oppose the motion or otherwise respond.

4

The Court must evaluate whether the factual record supports DIW's claim for breach of contract. The Court finds that it does.

To prevail on a breach of contract claim, a party must prove that (1) a valid contract existed between the parties, (2) the opposing party failed to perform a defined obligation under the contract, and (3) the breach caused the claimant to sustain damages. *EnviroFinance Grp., LLC v. Envt'l Barrier Co., LLC*, 440 N.J. Super. 325, 345 (App. Div. 2015). Here, the parties entered into the license agreement for the operation of a lodging facility. Pl.'s SMF ¶ 6. PGP breached that valid contract by terminating the agreement prematurely and not paying the Recurring Fees and liquidated damages it owed DIW as a result. *Id.* ¶¶ 25, 29-38. Damages flowed therefrom because DIW performed the services promised under the license agreement without being compensated for them. *See* Fenimore Aff. Ex. C (itemizing the services DIW performed, for which it charged PGP the Recurring Fees). DIW has pled the elements of a claim for breach of contract and put forth unchallenged facts which constitute a legitimate cause of action.

## II.  Plaintiff Satisfactorily Establishes The Amount of Damages

DIW seeks damages that include the Recurring Fees ($193,742.10, including interest, calculated at 1.5% per month under section 7.3 of the license agreement), liquidated damages ($160,738.22, also including interest), attorneys' fees ($7,800.00, under section 17.4 of the license agreement), and costs ($1,135.69, also under section 17.4). The Court has reviewed DIW's submissions and finds that these amounts accurately represent the amount PGP owes DIW. *See* Fenimore Aff. ¶¶ 26-27 (Recurring Fees); *id.* ¶¶ 28-33 (liquidated damages); *id.* ¶¶ 35 (attorneys' fees); Couch Cert., Ex. N (Attorney Billing Records). Judgment will be entered against PGP in the amount of $363,416.01.

NOT FOR PUBLICATION                                                                                         CLOSE

## CONCLUSION

Plaintiff's motion for summary judgment is granted. Judgment is entered against PGP in the amount of **$363,416.01.** This amount is comprised of $160,738.22 in liquidated damages (principal plus prejudgment interest), $193,742.10 for Recurring Fees, and $8,935.69 for attorneys' fees and costs.

DATE: 28 July 2015

Hon. William H. Walls
Senior United States District Court Judge